In the Matter of the Estate of JOHN MORRISON, Deceased.

Surrogate's Court, New York County, December 19, 1939.

*Peter J. Haberkorn,* for Thomas A. Rickert, as executor, etc.

*Joseph A. Padway,* for Thomas A. Rickert, as trustee and residuary legatee.

*William Kurz,* trustee, appearing in person.

*Morris A. Schoenfeld* [*Bert Cohen* of counsel], for Joseph A. Moran, as trustee and residuary legatee, and Lotta A. Moran, as residuary legatee, and as executrix, etc., of Helen A. Moran, deceased.

FOLEY, S. The proceeding for the settlement of the account of the executor was consolidated by appropriate order with the proceeding for the construction of the will.

The questions of construction presented for determination involve: (1) The validity of the income dispositions of the trust of the business left by the testator and the validity of the remainder thereof and particularly whether the provisions of the will violated the statutory rules for the suspension of the power of alienation, and (2) if partial illegality is found whether any of the trust provisions may be saved by the process of judicial surgery.

The testator had conducted a business for upwards of thirty years in the procurement of advertisements for official publications of labor organizations affiliated with the American Federation of Labor. At the time of his death he had existing contracts with various labor organizations, some of which will terminate within the next few years and some of which are indefinite in term but subject to cancellation by the parties to the agreement.

Under the terms of the will the business was separated from the disposition of the other assets of the estate and given directly to his three trustees by paragraph third. He also gave to them the sum of $15,000 to be used as working capital. The trustees are his

nephew and two friends. By paragraph fifth he directed them to continue the business until his existing agreements and contracts had been carried out and fulfilled. He further provided: " Thereafter, the continuance of the said business, or renewal of any or all of said contracts, or the making of any new contracts, shall be entirely in the discretion of my trustees." A further grant of power of management and operation of the business was given by paragraph sixth. The controversy over the validity or invalidity of the trust and remainder arises out of the terms of paragraphs eighth and ninth. In paragraph eighth he directed his trustees to pay the income derived from the business in five equal parts to the three persons named as trustees, in their individual capacity, and to his two nieces, Helen and Lotta Moran.

In paragraph ninth he vested in his trustees discretion to liquidate the business. When liquidation occurred he directed that the proceeds be divided equally among his nieces, Helen Moran and Lotta Moran, and his nephew, Joseph Moran, and " in the event that any of the said beneficiaries shall die before such liquidation, then, and in that event, I hereby direct that the share of such beneficiary shall be paid to and equally divided among the surviving beneficiaries of the trust herein created. It will be noted that the remainder is contingent and that if any of the beneficiaries died before the time fixed for vesting by the exercise of the discretion of the trustees, the deceased remainderman was excluded from participation. The respective income estates are terminable either by the death of a life tenant or by the liquidation of the business. The postponement of vesting until the exercise of the discretion of the trustees to liquidate is clearly void and violates our statute against perpetuities. (*Henderson* v. *Henderson*, 113 N. Y. 1; *Matter of Wilcox*, 194 id. 288; *Dana* v. *Murray*, 122 id. 604; *Booth* v. *Baptist Church*, 126 id. 215; *Matter of Butterfield*, 133 id. 473; *Matter of Manning*, 133 Misc. 695; affd., 227 App. Div. 644; affd., 252 N. Y. 540; *Matter of Roe*, 281 id. 541.)

The term of the trust fixed by the testator was not measured by a life or two lives in being. It was similar in character to an absolute period which might extend far beyond the lives of any or all of the five income beneficiaries. (*Matter of Roe, supra.*) Its duration might be indefinite, for the testator in paragraph thirty-fourth of his will authorized the continuation of the trust by vesting in his surviving trustees the power to fill any vacancy which might occur within their number. Authority for self-perpetuation was, therefore, conferred. Incentive to at least two of the trustees specifically named in the will to continue the business was supplied, since they were income beneficiaries only and were not remaindermen. They

could profit by the payment of income to them during the period in which the business was conducted. If and when they decided to liquidate, their pecuniary interests ceased. As no time was fixed within which the trustees were obliged to determine when liquidation should be had, the trust might continue indefinitely. Hence, it was not limited, as required by the permissible statutory period for the duration of a trust. (*Matter of Rohr*, 130 Misc. 174.)

The void remainder here under paragraph ninth is exactly similar in character to that in *Henderson* v. *Henderson* (*supra*). There the testator gave his residuary estate in trust with power in the executor to " partition, divide and apportion equally among all my children living at the time of making such partition and division." Vesting was postponed until an illegal event when the executor decided to sell or divide in kind. If any child died before the time of division leaving issue, his share was directed to be paid to his issue surviving " at the time of such partition." If any child died without issue, his portion was given to the surviving children. The remainder was determined to be void as constituting an illegal suspension. In the pending proceeding, as in *Henderson* v. *Henderson* (*supra*), the ascertainment of the persons entitled to take as remaindermen was postponed to the time of the exercise of the power by the fiduciary.

It is an elementary rule in the testing of future interests that it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the permitted statutory period. If such events might happen beyond the statutory period invalid suspension results. (*Matter of Wilcox*, 194 N. Y. 288; *Schettler* v. *Smith*, 41 id. 328.) Without the happening of any of the actual events here, the conclusion of invalidity would have been reached. But one significant happening demonstrates the vital defects of the testator's plan. Helen Moran, one of the income beneficiaries of the business and one of the remaindermen, died shortly after the testator. No substitutional gift of her share of income was made in the will. No liquidation of the business as yet occurred. Under these circumstances acceleration of the contingent remainder may not be resorted to. There has, therefore, actually occurred a demonstration of the arbitrary illegal suspension between the date of the death of the life tenant and the vesting by prospective liquidation.

It is argued here by those who assert legality in the trust and in the remainder that the general plan of the testator may be saved by treating the power to liquidate as a discretionary power in the trustee exercisable at any time. That contention must be overruled. The power is a general power in trust. (*Dana* v. *Murray*,

122 N. Y. 604.) It might even be construed under the latter decision, because of the provisions of section 157 of the Real Property Law, to be an imperative power. Its execution might be compelled by the court. (*Matter of Leo,* 170 Misc. 491.) But despite these rules " it operates to suspend the vesting of the fee until the power is executed " either voluntarily or by judicial direction and is thereby void. (*Dana* v. *Murray, supra.*) A perpetuity cannot be created by a power in trust any more than by a direct limitation. (*Booth* v. *Baptist Church,* 126 N. Y. 215.)

It is also claimed that *Robert* v. *Corning* (89 N. Y. 225) applies to the present will. Upon an examination of the facts in that case the distinction between the wills and its inapplicability here are clear. There the will contained an ordinary power to sell the residuary assets and to divide the proceeds among the children of the testator and their issue by substitution in the event of their deaths. There was indication that the maker of the will appreciated the difficulty of liquidation due to the then existing depression in real estate. The executor was authorized to hold for not more than three years from the date of death. The Court of Appeals held that the power of sale was discretionary and that there was no prohibition against its exercise by the executor at any time short of the period of three years. Vesting occurred at the death of the testator. No unlawful suspension resulted. Moreover, that case is further distinguishable from the will here because the persons entitled to the intermediate payment of the rents and profits were the same persons who took the outright shares of the residuary estate. There was in that case no declaration as in the present will and in *Henderson* v. *Henderson* (*supra*) of a postponement of ascertainment of the class of contingent remaindermen until the date of liquidation or division.

In this respect also the conclusion in *Matter of Nimphius* (139 Misc. 133) is not pertinent to the present case. In that case the income and principal beneficiaries were the same. The power of sale was discretionary and exercisable at any time. The trusts were severable, the shares of the residue were specifically fixed and the surrogate found there was no illegal suspension of the power of alienation.

I hold that no part of the plan of the testator may be saved. Illegality taints not only the ultimate estates, but also the primary trusts, and a determination of complete invalidity is inescapable. (*Matter of Manning,* 133 Misc. 695; affd., 227 App. Div. 644; affd., 252 N. Y. 540.) Moreover, even if the power in trust was separable, it is equally void. In *Matter of Manning,* just cited, the testatrix attempted to create a trust for an absolute period of five years,

with instructions for the division of the income during that time in shares proportionate to their interest in the remainder. The remainder was contingent to the " then living survivors." There was an alternate inference from the will that the trust might depend upon the lives of seven persons, with further consequent invalidity. In the well-considered opinion of former Surrogate, now Justice, SCHENCK, the entire trust was declared void. There, as here, the validity or invalidity of the power of sale was dependent upon the validity or invalidity of the trust term and the ultimate objects of the trust. " A power is an authority to do any act which the grantor might himself lawfully perform, but when the object of a power is unlawful the power is void." If the trust fails for illegality, the power likewise is illegal. (Citing *Benedict* v. *Webb*, 98 N. Y. 460, and *Dana* v. *Murray*, 122 id. 604.)

In *Henderson* v. *Henderson* (*supra*) the court, although holding that the contingent remainder dependable upon the discretion of the executor was void for remoteness of vesting, found a way to effectuate the primary intent of the testator. In that case at the very commencement of the paragraph in question there was a gift to the children of the testator with contingencies for substitution in case of their deaths. The subsequent language for such substitution was subordinate to the primary intent and was rejected. There the provision for the payment of intermediate income was actually a direction for payment on account of absolute bequests. Here, on the other hand, the designated beneficiaries of income are not the same persons entitled to the remainder.

The desirable policy of judicial salvage of testamentary provisions has its limits. Where the entire scheme of the testator is riddled with illegality, none of it can be saved. (*Matter of Wilcox*, 194 N. Y. 288; *Central Trust Co. of N. Y.* v. *Egleston*, 185 id. 23, 31; *Leach* v. *Godwin*, 198 id. 35; *Matter of Manning*, 133 Misc. 695; affd., 227 App. Div. 644; affd., 252 N. Y. 540; *Bishop* v. *Bishop*, 257 id. 40; *Matter of Roe*, 281 id. 541.) The parts are "hopelessly commingled " and " indistinguishably fused." (CARDOZO, J., in *Matter of Horner*, 237 N. Y. 489, 502.)

In the arrival at this conclusion there results, however, a fortunate situation whereby the special objects of the solicitude of the testator are protected. By the determination of invalidity of the trust of the business, it lapses and falls into the residue and passes under the residuary clause to the two nieces and nephew of the testator, who were plainly the primary objects of his bounty. They were the same persons named as the contingent remaindermen of the void trust. By reason of the residuary clause each of them became entitled to one-third of the business, or its proceeds, from

the date of the death of the testator. The share of Helen Moran, the niece who died after the testator, vested upon her death in her estate.

It is asserted that all the parties have expressly consented to the setting up of the trust, the payment over to the trustees of cash for working capital and to the continuation of the business by the trustees. Their conduct in so doing adds nothing to the will. The statute can no more be violated by the agreement than by the testamentary directions. The statute against perpetuities represents the public policy of the State and may not be waived or disregarded. Neither the consent of the parties nor an alleged estoppel against them can prevent an adjudication of invalidity of the entire trust under the duty of the court. (*Carrier* v. *Carrier*, 226 N. Y. 114, 122; *Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 id. 525; *Matter of Schaefer*, 110 Misc. 628; 112 id. 308; *Church* v. *Wilson*, 152 App. Div. 844; affd., 209 N. Y. 553.) Payments, however, made by the trustees upon the express consent of the persons interested during the period of management and up to the time of adjudication of invalidity may not be recouped. (*Bailey* v. *Buffalo L., T. & S. D. Co.*, *supra.*) After the date of adjudication of invalidity the trustees' powers cease. The business may be liquidated by the executor under the rules applicable to the administration of the assets of an estate and particularly to the sale or liquidation of a business left by a testator. (*King* v. *Talbot*, 40 N. Y. 76; *Matter of Gorra*, 135 Misc. 93; 2 Jessup-Redfield, Surrogates' Courts [3d ed.], p. 1626 *et seq.*) However, the estate has now been substantially administered and the debts and administration expenses and estate taxes have been paid. Rather than subject the executor to the hazards of liquidating the business and the possibility of surcharge, it would be more practical for the residuary legatees to take over the business in kind. If they are so minded they may file the necessary written consents, pursuant to section 268 of the Surrogate's Court Act.

The surrogate holds that the gift of $15,000 to the trustees for working capital of the business fails with the rest of the trust.

The balance of the compensation of the attorney for the executor is allowed by consent in the sum of $2,947.19. A reasonable bill of costs with his proper disbursements may be taxed by him upon notice.

The surrogate further holds that section 124 of the Decedent Estate Law applies to this estate and an equitable apportionment of the Federal and State inheritance taxes, based upon the respective benefits derived by the persons interested, is decreed. The attorney for the executor is directed to serve and file an amended

schedule of the account showing a proper equitable apportionment of the taxes. The proposed reservation of a fund to meet further inheritance taxes has been obviated by the stipulation of the parties and the decree need not contain any direction for such reservation.

Submit decree on notice construing the will and settling the account accordingly.